CIACCIO, Judge.
Following a bench trial of this automobile accident case, judgment was rendered against the Louisiana Department of Transportation and Development (hereinafter “DOTD”), and in favor of plaintiffs, Lydia Chuter and Edward Selle, in the sum of |125,000.00 and $7,500.00, respectively. DOTD now seeks review, urging that the trial court erred in holding them liable and in failing to find contributory negligence on the part of plaintiffs. Although we find that the trial court was clearly wrong in its factual determination that plaintiff, Ms. Chuter, was not negligent in travelling at an excessive rate of speed, under our present jurisprudence, we are bound to affirm the judgment.
The facts of the accident are as follows:
On January 20, 1980, Lydia Chuter and her fiance, Edward Selle, went to the Gulf Outlet Marina in St. Bernard Parish to attend a Super Bowl party on a houseboat owned by a prospective employer of Mr. Selle. Several hours later, the couple left the party, planning on meeting several friends at a restaurant/lounge in the West End area of New Orleans. Mr. Selle, who was a guest passenger in the vehicle Ms. Chuter was driving, was guiding Ms. Chu-ter as she was unfamiliar with the area.
On the direction of Mr. Selle, the Chuter vehicle left the Marina, turned right on Paris Road and headed toward the Intra-coastal Waterway Bridge. This bridge is a four-lane divided roadway oriented in a general north-south direction which extends over the Mississippi River Gulf Outlet. At the northern end of the bridge the roadway makes an abrupt left turn to direct traffic to Paris Road, which is a two lane roadway running parallel to the bridge. There is a six-inch cement curb along the full length of this curve. In addition, the roadway extended northward beyond the cement curb for approximately 150 feet into a wooded area. Construction of this roadway was ceased by a order of the federal government for protection of the nearby wetlands. This unusual configuration of the roadway was part of a temporary connection of this bridge to Paris *427 Road pending the federally-approved construction of a connection between the bridge with the interstate system. The posted speed limit on the bridge was 55 miles per hour.
The police report indicates that this accident occurred at approximately 9:40 p.m. The evidence further shows that fog on the bridge that evening was very heavy. Apparently, Ms. Chuter failed to negotiate the curve, and her vehicle jumped the cement curb, flipped over several times and landed in the wooded area north of the highway.
Mr. Chuter and Mr. Selle subsequently brought this action against DOTD alleging liability under negligence and strict liability theories as per La.Civil Code Arts. 2315-2317. The basic allegations were first, that the sharp left turn on this type of highway presented an unreasonable risk of harm; and, second, that DOTD’s failure to adequately sign and illuminate this area to alert drivers of this sharp curve also rendered the highway unreasonably dangerous.
DOTD denied plaintiffs allegations of strict liability and negligence, and asserted that the sole cause of the accident was the negligence of Ms. Chuter in driving at an excessive rate of speed under the foggy weather conditions. DOTD also argues that Mr. Selle, who was familiar with this area, was negligent in failing to alert Ms. Chuter of the turn in the roadway. The trial court found the condition of the roadway unreasonably dangerous and stated in its reasons for judgment:
The Court is of the opinion that this roadway configuration created a virtual trap for unsuspecting motorists unfamiliar with this intersection. No motorist could anticipate this highly unusual configuration, where a four lane highway ended abruptly, then turned sharply into a two lane road.
Although we find no manifest error in the trial court’s determination that the roadway was defective, we do not agree with the conclusion that Ms. Chuter was free from negligence.
As to the condition of the roadway, the evidence indicates that the State was aware that the configuration of the roadway presented problems for motorists. The City of New Orleans and the state representative in the area had received numerous complaints from motorists who found the sharp left turn at the north end of the bridge difficult to negotiate, and had informed DOTD of these problems. Further, DOTD was aware of several single-vehicle accidents which had occurred at this intersection when a driver had failed to safely make the turn. In response to this information, DOTD began a study of this site and, in conjunction with the findings of the study, installed several traffic devices to apprise motorists of the road configuration, including advance warning signs to slow to 15 miles per hour in anticipation of the turn, reflectorized pavement markers and street lights.
Robert Lipp, a court-approved expert in accident reconstruction and highway design, testified that in his opinion, this intersection as it existed on the night of the accident was poorly designed in that a vehicle is forced to decelerate very quickly from 55 miles per hour on the bridge to 15 miles per hours to safely make the turn. He stated that although the highway had adequate signage, these warnings would not assist a motorist in the presence of fog. Mr. Lipp stated that the signs should have been illuminated with artificial lighting and that rumble strips should have been installed on the roadway to alert the driver confronted with foggy weather conditions of the upcoming curve. In addition, Mr. Lipp opined that the six-inch barrier curb that was erected around this curve was hazardous because a motorist who is unable to safely negotiate the turn and hits the curb loses control of his vehicle and is rendered incapable of recovering. He testified that at the very least, the curb should have been painted to make it visible to motorists travelling in bad weather conditions.
In the present case, both plaintiffs testified that on the night of the accident, the fog on the bridge was very dense and visibility was extremely low. This was Ms. Chuter’s first time to drive on this road, and Mr. Selle had only been on this area of *428 the roadway a couple of times previously. Due to the lack of visibility, neither Ms. Chuter nor Mr. Selle were able to observe the signage alongside the roadway which would have alerted them of the unusual configuration of the roadway. Certainly, DOTD should have anticipated that the bridge and adjoining roadway would be susceptible of fogging. However, no precautions were taken by DOTD to insure that a motorist travelling on the bridge in foggy weather would be alerted to the abrupt turn in the roadway.
Defendant knew of the frequency of accidents in this area caused by motorists who failed to negotiate this turn. Although defendant attempted to correct this dangerous situation by installing street lights and signage, these devices were ineffective in foggy weather. Defendant should have anticipated foggy weather conditions on this bridge and taken adequate precautions to alert motorists of this dangerous intersection. Obviously, the unlighted reflector-ized signs were not visible in heavy fog, and should have been illuminated in some manner.
In addition, the condition of the roadway created a virtual trap for the plaintiffs herein. Not only were the advance warning signs rendered ineffective in the fog, but the unpainted cement barrier curb outlining the curve was not visible, and prevented plaintiff from regaining control of her vehicle. Further, the open stretch of roadway on the other side of this curb gave the illusion that the roadway continued in that direction, especially in bad weather conditions, such as existed here.
We find that the record supports the trial court’s conclusions that the condition of the roadway on the night of the accident presented an unreasonable risk of harm to the plaintiffs here. DOTD failed to properly design and maintain this highway in reasonably safe condition for motorists travelling in foggy weather, and as such breached its duty of care. Our review of the record, however, reveals that plaintiffs conduct on the night of the accident was substandard in driving at an excessive rate of speed under the circumstances.
We note that at the time of the accident, the contributory negligence of the plaintiff acted as a total bar to her recovery. Ms. Chuter testified at trial that she maintained a consistent rate of speed of 30-35 miles per hour while crossing the bridge although her visibility was only a few feet in front of her vehicle. The trial judge found that plaintiffs actions in maintaining this speed even in these circumstances were reasonable in light of plaintiffs previous experience of having her vehicle struck from the rear in an earlier accident. We do not agree.
Mr. Lipp testified at trial that the maximum speed that plaintiff should have been travelling given the weather conditions and the lack of visibility was 10.2 miles per hour. We find that, despite her earlier accident, plaintiffs conduct in failing to reduce her speed to a prudent speed under the foggy weather conditions was negligent and was a contributing, if not the sole cause of the accident.
However, our inquiry does not end here. In determining liability for this accident, the question is whether the risk of injury in failing to negotiate a sudden curve in the road was a risk reasonably related to plaintiffs failure to travel at a reasonable rate of speed under the foggy weather conditions. Rue v. Department of Highways, 372 So.2d 1197 (La.1979); Sinitiere v. Lavergne, 391 So.2d 821 (La.1980). Because we are unable to distinguish this case from prior jurisprudence, we conclude that it does not.
The duty of the highway department to maintain reasonably safe highways extends to the protection of those people who may be forseeably placed in danger by an unreasonably dangerous condition. Sinitiere, supra, 391 So.2d at 825. Plaintiffs are within the ambit of this duty. Ms. Chuter was unaware of the strange configuration of the highway, and due to the heavy fog which rendered the warning signs ineffective, she was not apprised of the dangerous condition of the sharp curve in the roadway. The presence of fog on the bridge was a forseeable danger and *429 should have been anticipated by DOTD. We conclude that plaintiffs conduct is no bar to her recovery of damages occasioned primarily because DOTD failed to maintain this highway in reasonably safe condition for motorists travelling in heavy fog.
We find no merit in DOTD’s argument that Mr. Selle should have notified Ms. Chuter of the change in the roadway. Although the record indicates Mr. Selle had travelled on the roadway twice before, there was no evidence which indicated he was aware of the sharp curve in the road on the night of the accident.
We finally note that neither party has questioned the quantum of the award, and we therefore do not reach that issue.
Accordingly, for the ■ reasons assigned, the judgment appealed from is affirmed at appellant’s costs.
AFFIRMED.